IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

FILED
OCT 4 2019
U.S. DISTRICT COURT-WVND
WHEELING, WV 26003

UNITED STATES OF AMERICA,

Plaintiff,

v.

CRIM. ACTION NO.: 5:18CR54
(BAILEY)

DEMETRIUS MOORE,

Defendant.

# REPORT AND RECOMMENDATION TO THE DISTRICT JUDGE RECOMMENDING THAT DEFENDANT'S MOTION [40] TO SUPPRESS and SUPPLEMENTAL MOTION [52] TO SUPPRESS BE DENIED

Currently pending before the Court is Defendant's Motion [40] to Suppress, filed September 2, 2019. The Government filed a Response in Opposition [45] on September 12, 2019. Defendant filed a Supplemental Motion [52] Motion to Suppress on September 24, 2019. The Government filed a Response [53] on September 26, 2019. The Court held an evidentiary hearing on September 26, 2019.[1] After considering the parties' briefs, the applicable law and the Court file, and after considering the evidence and argument presented during the aforementioned hearing, the undersigned would **RECOMMEND** that Defendant's Motion to Suppress [ECF No. 45] and Supplemental Motion to Suppress [ECF No. 52] be **DENIED**.

---

[1] The Evidentiary Hearing was originally set for September 10, 2019, but it was continued on Defendant's Motion and reset for September 26, 2019 by agreement of the parties. [ECF Nos. 41 and 46]

# I.
# FACTUAL/PROCEDURAL HISTORY

Defendant was indicted on December 4, 2018 on one count of Prohibited Possession of a Firearm and one count of Possession of a Stolen Firearm. A forfeiture allegation is contained within the Indictment. The evidence which provides the basis for the charges in this case was found during a visit to Defendant's home by parole officers on August 29, 2018. Defendant seeks to suppress all evidence found during the search of Defendant's residence which took place at that time. As was stated above, a hearing was held on September 26, 2019 regarding Defendant's request. During the September 26, 2019, hearing, ten (10) witnesses appeared and provided testimony, including Defendant himself. Though slight variations existed, the timeline of material events was consistent among the parole officers who appeared and provided testimony. Defendant's testimony differed from that of the parole officers. ATF Agent Travis Campbell testified regarding the firearms seized during the search. Agent Campbell further testified regarding the statements made by Defendant following discovery of the firearms, and those made subsequent to his arrest. The relevant testimony is summarized below.

### A. Defendant's Testimony

Defendant testified that when the parole officers arrived at his home to conduct a home visit, he was in his bedroom with his brother smoking marijuana and watching television. His brother heard the knocking first. Defendant did not believe someone was knocking at first, but then realized that someone was indeed knocking and went downstairs to see who it was. He inquired of his wife, who was sitting on the living room couch watching television. She declined to answer the door. Defendant believed that it was an ex-girlfriend and asked who was at the door. No one answered. He tried looking through the peep hole, but it was covered so he could not see. He then opened the door. Everyone on the porch entered the house. They asked where

2

the bedroom was, and he took them upstairs where the search occurred. Though Defendant did not refuse entry, he did not consent either. The men identified themselves only after they entered his residence.

Defendant knew that he was on parole at the time of this home visit. He had been out of prison for less than one year and had only several more weeks on parole when this home visit occurred. Defendant was shocked to see the officers on his front porch. He had never been subjected to a home visit the entire time he was on parole.

### B. Testimony of the Parole Officers and ATF Agent Travis Campbell

On the night of August 29, 2018, two teams of parole officers conducted various home visits during night detail. Defendant's home was one such residence visited on that date. The teams included two relatively new parole officers (Hillary Richards and Melissa Richmond), as well as various supervisors and enhanced supervision officers from around the State of West Virginia (Brian Templeton, Bryan Thompson, John Tackett, David Toler, Matthew Currence, Douglas Workman, and Bryan Ware). These supervisors and enhanced supervision officers were present to provide assistance to a short-handed parole office and to conduct home visits which had not been conducted in some time.

The first team arrived at Defendant's home (he resided in an apartment complex) around 9:30 p.m. on August 29, 2018 and knocked on the front door. Defendant opened the door. The parole officers identified themselves and advised that they were there to conduct a home visit. Defendant permitted entry into the home. The officers asked where the bedroom was. Defendant showed them to the bedroom. Upon entry into the bedroom, the officers smelled marijuana. One of the officers noted that a marijuana joint was still smoking in an ashtray next to the bed. At that point, the officers removed Defendant from the bedroom and conducted a

search of the bedroom where they found two firearms. A bag of marijuana was found in the nightstand. Digital scales were also found. The firearms were not within plain view.

The second team arrived at Defendant's residence between 9:30 p.m and 9:45 p.m. When they arrived, the other team had already entered Defendant's residence. It was not immediately clear from the testimony exactly why the second team arrived at Defendant's residence.

The Rules and Regulations Governing Parole Supervision applicable to paroled persons state that a parolee or probationer shall allow his or her parole officer to visit his or her place of residence for supervision purposes without obstruction and that the parolee or probationer shall submit to a search without a warrant of his person, place of residency or motor vehicle for supervision purposes. *See* ECF No. 55-1. These Rules and Regulations were confirmed via the testimony of various parole officers.

ATF Agent Travis Campbell testified that the two firearms recovered from Defendant's residence include an AK-type firearm and a Glock 9mm caliber pistol. After being Mirandized, Defendant advised Agent Campbell that he received the firearms from someone who had stolen them from a home in Wheeling. Defendant admitted that he was holding them for this other person and that he had received money to do so. While incarcerated in the Northern Regional Jail, Defendant reached out to Agent Campbell again and advised that he had additional, useful information. Agent Campbell interviewed Defendant a second time, wherein Defendant provided additional details and corrected a minor misstatement he had made previously to protect his wife. Agent Campbell found Defendant to be cooperative and forthright at all times.

The parole officers denied blocking the peep hole on the front door prior to entry. Further, those who were questioned regarding this issue denied hearing Defendant ask 'who is it'

through the closed front door. Their testimony was consistent in that the front door opened fairly quickly after they knocked, and it was only after opening the front door that Defendant inquired who the officers were. The officers testified that if someone had asked them to identify themselves prior to opening the door, they would have done so. The officers further confirmed that there was nothing unusual about conducting a home visit at 9:30 p.m., noting that parolees have a 9:00 p.m. curfew, so that a home visit conducted at 9:30 p.m. would be a time when the parolee should be at home.

## II.
## ARGUMENTS OF THE PARTIES

### A. Defendant's Arguments

Defendant argues that any and all evidence, and all statements, should be suppressed for the following reasons: (1) he did not consent to the search of his residence on the night in question; (2) the home visit which preceded the search was a 'ruse'; (3) officers should have obtained a search warrant prior to appearing at Defendant's home, but failed to do so; (4) the search was unreasonable and harassing; (5) officers lacked reasonable suspicion to conduct a search; and (6) parole officers violated the knock-and-announce rule prior to gaining entry into Defendant's residence.

### B. Government's Arguments

The Government maintains that there was nothing unconstitutional or improper about the manner in which the subject search was conducted. Therefore, the evidence obtained, and the Defendant's statements should not be suppressed. In particular, the Government contends that parole officers were not required to obtain Defendant's consent or a search warrant prior to conducting the subject search; and the subjective intentions of the parole officers at the time of

the home visit are not relevant; the search was reasonable; the officers did not need "reasonable suspicion" to search Defendant's residence; and an alleged violation of the "knock and announce" rule does not mandate exclusion of evidence.

## III.
## STANDARDS

The burden of proof for a Motion to Suppress is on the party seeking to suppress the evidence. *United States v. Gualtero*, 62 F.supp.3d 479, 482 (2014) ("[t]he legal standards governing a motion to suppress are clear....[t]he burden of proof is on the party to seeks to suppress the evidence") (citing *United States v. Dickerson*, 655 F.2d 559, 561 (4th Cir. 1981)). Once the defendant establishes a basis for his Motion, the burden shifts to the government to prove the admissibility of the challenged evidence by a preponderance of the evidence. *Id.* (citing *United States v. Matlock*, 415 U.S. 164, 177 n. 14 (1974)). With these standards in mind, the undersigned will turn to the substance of the arguments raised vis-à-vis Defendant's Motion to Suppress.

## IV.
## DISCUSSION

### A. Consent

Defendant first argues that, although the Rules and Regulations Governing Parole Supervision provide that "[a] parolee or probationer shall submit to a search without warrant of his or her person, place of residency or motor vehicle by his or her parole officer for supervision purposes at any time during the parole period," said regulation does not expressly provide that the parolee automatically consents to such a search. Defendant maintains that he did not consent

to the subject search. As a result, the search was not lawful. For the reasons that follow, this argument is not persuasive.

West Virginia Code § 62-12-17 provides in relevant part:

(a) Release and supervision on parole of any person, including the supervision by the Division of Corrections of any person paroled by any other state or by the federal government, shall be upon the following conditions:

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

(3) That the parolee complies with the rules prescribed by the Division of Corrections for his or her supervision by the parole officer.

As evidenced by the word "shall" in the aforementioned statute, compliance with the rules prescribed by the West Virginia Department of Corrections is mandatory.

The West Virginia Division of Corrections' Rules and Regulations Governing Parole Supervision [ECF No. 55-1] provides the following rule for prisoners released on parole: "[a] parolee or probationer shall submit to a search without warrant of his or her person, place of residency or motor vehicle by his or her parole officer for supervision purposes at any time during the parole period." It is therefore mandatory for parolees supervised by the West Virginia Division of Corrections to submit to a warrantless search of his or her person, place of residence or motor vehicle.

Because Defendant was on parole at the time of the subject search, and because he was being supervised by the West Virginia Division of Corrections, it is clear that Defendant's submission to a search without a warrant of his person, residence, or motor vehicle was mandatory at the time the search at issue was conducted. A review of ECF No. 55-1 further reveals that Defendant acknowledged this condition when he was released on parole, as is evidenced by Defendant's initials and signature on the document. Defendant was therefore aware of the fact that he was obligated to submit to the search conducted on August 29, 2018 as a

condition of his parole. As a result, whether Defendant gave his consent to the search is irrelevant.

Moreover, there is no authority of which the undersigned is aware, and none has been cited, which requires parole officers to obtain a parolee's consent prior to searching his residence, person or motor vehicle. The Government's argument on this point is well-taken – requiring parole officers to obtain a warrant prior to each search of a parolee's person, home, or vehicle would eviscerate the Rules and Regulations Governing Parole.

Notwithstanding the above, and assuming the issue of whether Defendant's consent is relevant to the consideration of this issue, the undersigned would nevertheless conclude that Defendant gave his consent to this search when he was released on parole, as is evidenced by his initials and his signature on ECF No. 55-1.[2]

### B. Ruse

Defendant also argues that the home visit conducted by parole officers was a ruse; that officers were in actuality tipped off or had otherwise obtained information indicating that Defendant had violated his parole. Defendant argues that, in this way, the home visit was a pretext that enabled parole officers to conduct a warrantless search of Defendant's home for contraband. The undersigned is not persuaded by this argument because the motivations of the parole officers are not a factor in determining the legality of a search conducted on a parolee by parole officers pursuant to the Rules and Regulations Governing Parole. *See United States v. Knights*, 534 U.S. 112, 122 (2001) (noting reticence to consider motivations of individual officers when evaluating Fourth Amendment challenges). Additionally, the evidence adduced during the hearing does not support Defendant's position.

---

[2] Defendant does <u>not</u> argue that he refused the search.

8

As was recounted above, virtually all of Defendant's witnesses (save for Defendant himself) indicated that the search of Defendant's residence was preceded by a routine home visit, which was conducted at approximately 9:30 p.m., a time when parolees are likely to be and should be at home (their curfew is 9:00 p.m.). According to the testimony, this home visit was conducted because it had been some time since home visits had been accomplished (as is borne out by Defendant's own testimony that he had never had a home visit during the approximately one year he was on parole). Multiple officers were present at his home because there were two teams conducting home visits on that particular night who were training new parole officers, which accounts for the additional personnel. There is no evidence or indication that these officers were present to conduct anything other than a routine home visit, and there is no evidence or indication that these parole officers possessed information that Defendant was in violation of his parole before they arrived at his residence. Therefore, this argument is without merit.

### C. Search Warrant

Defendant next argues that, if officers suspected Defendant was in violation of his parole, they should have obtained a search warrant prior to conducting the search at issue. The undersigned is similarly not persuaded by this argument. Nothing within the Rules and regulations Governing Parole Supervision or W. Va. Code § 62-12-17 obligates parole officers to obtain a warrant prior to conducting a home visit and search if they have received information that a parolee is in violation of his parole. To the contrary, W. Va. Code § 62-12-17 and ECF No. 55-1 specifically provide that Defendant was obligated, as a condition of his parole, to submit to a *warrantless* search, and there is no authority of which the undersigned is aware (and none has been argued) that contradicts or subverts this condition.

### D. Unreasonable/Harassing

Defendant next argues that the subject search was unlawful because it was unreasonable and harassing in nature. Specifically, Defendant notes that the search was conducted at 9:30 p.m. when most people are settled and busy preparing for work the next day. After considering this argument and the relevant case law, the undersigned would conclude that this argument is without merit.

It is well-settled that the touchstone of the Fourth Amendment is reasonableness. *United States v. Knights*, 534 U.S. 112, 118 (2001) ("[t]he touchstone of the Fourth Amendment is reasonableness"); *Samson v. California*, 547 U.S. 843, 866 n. 4 (2006) ("[t]he touchstone of the Fourth Amendment is reasonableness, not individualized suspicion"). When evaluating the reasonableness of a search under the Fourth Amendment, the totality of the circumstances of the search must be considered while balancing the degree to which a search intrudes upon an individual's privacy against the degree to which the search is necessary to promote legitimate government interests. *Samson*, 547 U.S. at 848. When considering the aforementioned factors, it is clear that the subject search was reasonable.

Parolees are on a "continuum" of state-imposed punishments. As such, they have fewer expectations of privacy than others, including those on probation, because "parole is more akin to imprisonment than probation is to imprisonment....parole is an established variation on imprisonment of convicted criminals." *Samson*, 547 U.S. 850. On the other hand, and as has been recognized by the Courts, the government has an interest in ensuring that parolees comply with the Rules and Regulations Governing Parole to promote rehabilitation and to prevent recidivism. *Id.* at 853. Additionally, Defendant was aware that he could be subjected to a search of his person, his residence or his motor vehicle at "any time during his parole period." *See* ECF

No. 55-1. Therefore, at the time of the subject search, and because he was on parole, Defendant had diminished privacy interests. The State of West Virginia also had compelling interests to monitor the Defendant and Defendant was aware that such monitoring could occur at any time during his parole period.

Given the diminished privacy interests of Defendant and given the State of West Virginia's compelling interest in monitoring Defendant, the fact that this search was conducted at approximately 9:30 p.m. does not in and of itself render the search unreasonable. To the contrary, after considering the testimony of the parole officers, 9:30 p.m. seems to have been an eminently reasonable time for officers to conduct a home visit. Indeed, as the parole officers testified, parolees have a 9:00 p.m. curfew, so this search was conducted within a half-hour of Defendant's mandatory in-home time. This would have given Defendant enough time to get home (assuming Defendant had previously been out of the home), but would not have been so late as to cause Defendant not to expect a home visit by parole officers.

Moreover, and to the extent Defendant suggests the search unreasonably disturbed his nighttime routine of settling in for the night and getting ready for work the next morning, this argument disingenuous. As Defendant himself testified, he was not settling in for the night and getting ready for work the next morning. To the contrary, and by his own admission, he was smoking marijuana with his brother in an upstairs bedroom while watching television.

Finally, and to the extent Defendant argues that the number of parole officers who presented to his residence on the day in question constitutes an unreasonable and/or harassing search, the undersigned would similarly conclude that this argument is without merit. The testimony from each of the parole officers on this point has been consistent: on the day of the search of Defendant's residence, officers were conducting home visits in two teams and

Defendant's was the last home visit of the night. Additionally, the teams were training two new parole officers. It would therefore appear that the number of parole officers present at Defendant's residence on the night in question was the result of happenstance, and there is no evidence which would contradict this conclusion.

### E. Reasonable Suspicion

Defendant next argues that Rule (q) of the Rules and Regulations Governing Parole Supervision impliedly requires that parole officers have reasonable suspicion when conducting a search pursuant to said provision. Defendant relies upon *United States v. Baker*, 221 F.3d 438 (3d Cir. 1999) in support of this position. However, Defendant's argument ignores *Samson v. California*, 547 U.S. 843 (2006), which explicitly held that reasonable suspicion is not required for a parole officer to conduct a search. This argument is therefore without merit.[3]

### F. Knock and Announce

Finally, Defendant argues that parole officers violated the well-established knock-and-announce rule on the night of the home visit. As a result, Defendant contends that the search of his residence that night was unreasonable, and all evidence seized must be suppressed. The undersigned is also not persuaded by this argument.

The evidence adduced on this issue during the September 26, 2019 hearing is contradictory. Parole officers maintain that they did not violate the knock-and-announce requirement. Rather, their testimony indicates that they knocked, and the door opened fairly quickly thereafter. They denied hearing anyone ask, 'who is it?' before the door opened. On the other hand, Defendant testified that no one announced their identity prior to Defendant opening

---

[3] Without making a finding as to "reasonable suspicion," the undersigned notes that Defendant also ignores the fact that, on the night of the subject search, parole officers smelled marijuana inside of Defendant's home, a marijuana cigarette was smoking in plain view on a table in the Defendant's bedroom, and Defendant admitted to having smoked marijuana prior to officers' arrival.

12

the front door to his home despite Defendant repeatedly asking the visitor(s) to identify him/herself or themselves. Defendant further testified that officers covered the peephole so that he could not visually identify who was at his door. The parole officers deny that this was the case. Regardless of whether there was a knock-and-announce violation, however, the case law is clear that the exclusionary rule is inapplicable to cases where a knock-and-announce violation has been committed. *Hudson v. Michigan*, 547 U.S. 586 (2006); *United States v. Ramos-Cruz*, 667 F.3d 487, 503 (4th Cir. 2012) ("the exclusionary rule does not apply to knock-and-announce violations"). Therefore, this argument is without merit.

## V.
## CONCLUSION

Accordingly, and for all of the foregoing reasons, the undersigned **RECOMMENDS** that the Defendant's Motion to Suppress Evidence [ECF No. 40] and Defendant's Supplemental Motion to Suppress [ECF No. 52] be **DENIED**.

Any party who appears *pro se* and any counsel of record, as applicable, may, within **fourteen (14) days** after being served with a copy of this Report and Recommendation file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to parties who appear pro se and all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia, to the United States Marshals Service and to the United States Probation Office.

Dated: 10-4-19

JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE